UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

NAJEE SABREE BLACKMAN,          )
                                )
                  Plaintiff,    )
       vs.                      )       No. 1:02-cv-1447-JDT-TAB
                                )
CITY OF KOKOMO, et al.,         )
                                )
                  Defendants.   )

**Entry Discussing Motions for Summary Judgment**

This cause is before the court on the amended complaint of plaintiff Najee Sabree Blackman, on the defendants' answer, and on the parties' cross-motions for summary judgment.

Whereupon the court, having considered the pleadings and such motions, and being duly advised, now finds that the defendants' motion for summary judgment must be **granted**, while that of the plaintiff must be **denied.** One other pending motion is resolved as noted. This conclusion rests on the following facts and circumstances:

1.    As used in this Entry, "Blackman" refers to the plaintiff, Najee Sabree Blackman, "the defendant individuals" refers to defendants Sgt. Heath Haalck, Officer Richard Benzinger, Officer James Gunlite, Officer Rick Miller and Officer James Lushin, and "KPD" refers to the Kokomo, Indiana Police Department.

2.    As noted, Blackman has filed a motion for partial summary judgment and the defendants seek resolution of Blackman's claims through the entry of summary judgment.

   a.    The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Note to 1963 Amendment of **FED.R.CIV.P.** 56(e) (quoted in *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "Summary Judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" In a motion for summary judgment, the court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003)(citations omitted). "Rather, '[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.'" *Id.* (quoting *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994)). If a reasonable jury could return a verdict in favor of the nonmovant, summary judgment should not be granted. *Id.* (citation omitted).

b.  A court will grant summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Scott v. Edinburg,* 346 F.3d 752, 755 (7th Cir. 2003) (quoting **FED.R.CIV.P.** 56(c) and citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). The court must "construe all facts in a light most favorable to . . . the party opposing summary judgment, and . . . draw all reasonable inferences in his favor." *McGreal v. Ostrov,* 368 F.3d 657, 672 (7th Cir. 2004) (citation omitted). "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of Cook,* 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith v. Severn,* 129 F.3d 419, 425 (7th Cir. 1997)). However, the nonmoving party bears the burden of coming forward with specific facts from the record which show a genuine issue of material fact. *Morfin v. City of E. Chi.,* 349 F.3d 989, 997 (7th Cir. 2003) (citation omitted). "It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." *Liberles v. County of Cook,* 709 F.3d 1122, 1126 (7th Cir. 1983).

c.  The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed only by one party to the litigation. In evaluating cross-motions for summary judgment, courts should "'evaluate each motion on its own merits and view all facts and inferences in the light more favorable to the nonmoving party.'" *Bakery & Confectionary Union & Indus. Int'l Health Benefits & Pension Funds v. New Bakery Co. of Ohio,* 133 F.3d 955, 958 (6th Cir. 1998) (quoting *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994)).

3.  Blackman is the plaintiff in this action. He alleges that his federally secured rights were violated when officers of the KPD entered his residence at 2808 South Reed Street in Kokomo, Indiana on September 30, 2000, searched his dwelling without a warrant or probable cause, seized his property without a warrant, subjected him to excessive force, failed to intervene in the foregoing, and failed to advise him of his rights upon arresting him. He signed his complaint on September 2, 2002, and caused it to be filed with the clerk on September 8, 2002. Based on his status as a prisoner proceeding without counsel, his complaint is treated as having been filed on the date it was signed, September 2, 2002. The original defendants designated in the complaint were (a) the City of Kokomo, and (b) four (4) unnamed "John Doe" defendants. Each John Doe defendant was alleged to be a police officer with the KPD. Significantly, each John Doe defendant was apparently sued in his/her official capacity only. This was evident through the prayer for relief in the original complaint. An amended complaint was filed on June 6, 2003. The John Doe defendants were dismissed through the court's Entry of November 12, 2004. Other claims determined to be legally insufficient were also dismissed. The defendant individuals were named for the first time in this lawsuit in the amended complaint. It was noted in paragraph 4 of the Entry of November 12, 2004, that "[a]lthough the amended complaint makes reference at one point to pendent claims under Indiana law, no such claims are explicitly identified, and hence none will be inferred at present from the amended complaint." A further clarification was issued in paragraph 1 of the Entry issued on December 22, 2004, wherein the court noted that the defendant individuals were "sued in their individual capacities only."

    4.    The questions requiring resolution in this action are the following:

- Are Blackman's claims against the defendant individuals barred by the applicable statute of limitations?

- Was there probable cause for the plaintiff's arrest on September 30, 2000?

- Was there probable cause for the search of the plaintiff's trailer on September 30, 2000?

- Was constitutionally unreasonable force used against the plaintiff during the course of his arrest on September 30, 2000?

- Is there a viable basis for the imposition of municipal liability based on any of the circumstances of this case?

- If state law claims are asserted in this case, are the defendants entitled to summary judgment as to them?

    5.    One non-dispositive motion requires resolution, but does not require ruling separate from resolution of the cross-motions for summary judgment. The defendants' motion to reconsider filed on July 1, 2005, is **granted.** The motion is granted for the reasons set forth in the motion and for the additional reason that the parties have conducted ample discovery relative to their cross-motions for summary judgment. *Banco de Credito Indus. v. Tesoreria General,* 990 F.2d 827, 838 (5th Cir. 1993)(Rule 56 contemplates that parties will be afforded adequate time to conduct necessary discovery). *cert. denied,* 114 S. Ct. 877 (1994).

    6.    Blackman's claims are asserted pursuant to 42 U.S.C. § 1983. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole,* 112 S. Ct. 1827, 1830 (1992). To state a claim under § 1983, a plaintiff must allege (1) that he was deprived of a right secured by the Constitution or laws of the United States and (2) that the deprivation was caused by a person acting under color of state law. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155-56 (1978). The claims remaining for resolution are those identified in paragraph 3.e. of the Entry issued on November 12, 2004. Certain principles establish the parameters of a civil rights action such as this and the circumstances under which liability can be imposed based on such claims.

    a.    Subject matter jurisdiction over Blackman's claims is conferred by 28 U.S.C. § 1331, which provides that "[t]he District Courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

    b.    For a § 1983 claim such as Blackman has brought, "the statute of limitations is determined by the law of the state in which the violation took place," *Hoagland v. Town of Clear Lake, Ind.,* 415 F.3d 693, 699-700 (7th Cir. 2005), and in Indiana that is the two-year Indiana statute of limitations for personal injuries prescribed by IND. CODE § 34-1-2-2. *Forman v. Richmond Police Department,* 104 F.3d 950 (7th Cir. 1997)(citing *Perez v. Sifel,* 57 F.3d 503, 505 (7th Cir. 1995)). When a § 1983 claim

accrues is an issue of federal law, see *Sellars v. Perry,* 80 F.3d 243, 245 (7th Cir. 1996), and the federal rule is that a claim accrues when the plaintiff knows both the existence and the cause of his injury. *See Wallace v. City of Chicago,* 2006 WL 549008 (7th Cir. March 8, 2006).

c. Federal Rule of Civil Procedure 15(c)(3) permits a plaintiff to amend his complaint by adding parties "where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake." *Worthington v. Wilson,* 8 F.3d 1253, 1256 (7th Cir. 1993). Rule 15(c)(3) does not "provide for relation back under circumstances, such as [where] the plaintiff fails to identify the proper party." *King v. One Unknown Fed. Correctional Officer,* 201 F.3d 910, 914 (7th Cir. 2000).

d. Section § 1983 requires personal responsibility to support a viable claim. *Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001). "[A]n official meets the personal involvement requirement when [ ]he acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at h[is] direction or with [his] knowledge and consent." *Black v. Lane,* 22 F.3d 1395, 1401 (7th Cir. 1994) (quoting *Smith v. Rowe,* 761 F.2d 360, 369 (7th Cir. 1985)) (citations and internal quotations omitted).

e. Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred." *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979)). Accordingly, "the first step in any [§ 1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver,* 510 U.S. 266, 271 (1994).

f. The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated."

g. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford,* 125 S. Ct. 588, 593 (2004) (citations omitted). A law enforcement officer has probable cause to arrest a suspect "when the totality of the facts and circumstances within his knowledge and of which he has reasonably trustworthy information is sufficient to warrant a prudent person in believing the suspect committed or was committing an offense." *Marshall v. Teske,* 284 F.3d 765, 770 (7th Cir. 2002). "Determinations of probable cause are naturally based on probabilities, and a finding of probable cause 'does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime.'" *United States v. Funches,* 327 F.3d 582, 586 (7th Cir. 2003) (quoting *United States v. Carrillo,* 269 F.3d 761, 766 (7th Cir. 2001)). "It is well settled that the actual existence of probable cause to arrest precludes a § 1983 suit for false arrest." *Morfin v. City of East Chicago,* 349 F.3d 989, 997 (7th Cir. 2003) (citations omitted).

4

h.      When probable cause has been gained from a reasonably credible victim or eyewitness, there is no constitutional duty to investigate further. *Woods v. City of Chicago*, 234 F.3d 979, 997 (7th Cir. 2001); *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1247 (7th Cir. 1994)(noting that evidence of interviews and investigations is "not in any way a prerequisite to a finding of probable cause"). An officer who has probable cause to arrest is not required to conduct further investigation for exculpatory evidence or to pursue the possibility that the suspected offender is innocent. *See Simkunas v. Tardi,* 930 F.2d 1287, 1292 (7th Cir. 1991); *Marx v. Gumbinner,* 905 F.2d 1503, 1507 n.6 (11th Cir. 1990); *Franco-de Jerez v. Burgos,* 876 F.2d 1038, 1042 (1st Cir. 1989); *Kompare v. Stein,* 801 F.2d 883, 890 (7th Cir. 1986).

i.      "[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives where there is reason to believe the suspect is within." *Payton v. New York,* 445 U.S. 573, 603 (1980).  By contrast, the rule is well-established that a warrantless search of an automobile is permissible under the Fourth Amendment when a law enforcement officer has "probable cause for believing that the automobile which he stops and seizes [contains] contraband." *Carroll v. United States,* 267 U.S. 132, 156 (1925). "[T]he 'automobile exception' to the Fourth Amendment's warrant requirement . . . allows police to search a vehicle without a warrant when they have probable cause to believe it contains contraband or evidence of a crime." *United States v. Wimbush,* 337 F.3d 947, 950 (7th Cir. 2003)(citing *Alabama v. White,* 496 U.S. 325, 332 (1990)). "[T]he mobility of the vehicle is not essential to the application of the automobile exception." *United States v. Matthews,* 32 F.3d 294, 298-99 (7th Cir. 1994). "Probable cause exists if, under the totality of the circumstances, it is fairly probable that the car contains contraband or evidence." *United States v. Webb,* 83 F.3d 913, 916 (7th Cir. 1996). Also, "[a] lawful automobile search extends to all parts of the vehicle where contraband or evidence could be concealed, including the trunk." *Id.*

j.      "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor,* 490 U.S. 386, 396 (1989). Nonetheless, the Fourth Amendment prohibits the use of excessive force during the execution of a seizure, *id.* at 395 (holding that the Fourth Amendment's objective reasonableness test is the appropriate standard for evaluating excessive force claims). In order to decide whether the amount of force used during a seizure is "excessive," a court examines the totality of the circumstances to determine whether the intrusion on the citizen's Fourth Amendment interests was justified by the countervailing government interests at stake. *See Lanigan v. Village of E. Hazel Crest,* 110 F.3d 467, 475 (7th Cir. 1997). Under this standard, the relevant inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham,* 490 U.S. at 397. The amount of force permissible will depend upon the specific situation, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

5

k. Omissions can violate civil rights, and "under certain circumstances a state actor's failure to intervene renders him or her culpable under § 1983." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994); *Chavez v. Illinois State Police*, 251 F.3d 612, 652 (7th Cir. 2001). In *Yang,* the Seventh Circuit summarized the responsibility to intervene:

> An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring.

*Yang,* 37 F.3d at 285 (citations omitted).

l. Municipalities are "persons" subject to suit under § 1983, but liability may be imposed only "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694 (1978). In *City of Los Angeles v. Heller,* 475 U.S. 796 (1986), the Supreme Court held that a local government cannot be held liable for a constitutional deprivation allegedly brought about through an official policy or custom if a determination has been made that there was no constitutional violation committed by anyone in the first place.

7. The defendant individuals argue that the action was not timely brought as to them. They are correct.

a. It is undisputed that Blackman's claims accrued on September 20, 2000. He therefore had two (2) years, through September 20, 2002, in which to file suit. Although the action can be deemed to have been filed when Blackman signed the original complaint on September 2, 2002, the defendant individuals were not listed as defendants. The failure to include them was not a case of misidentification, but a case of lack of identification. The defendant individuals were not identified and added to the case until the filing of the amended complaint on June 6, 2003, some 8½ months after the statute of limitations expired.

b. The inclusion of "John Doe" defendants in the original complaint did not toll the running of the statute of limitations as to the defendant individuals, *Delgado-Brunet v. Clark,* 93 F.3d 339, 344 (7th Cir. 1996), and in fact suing John Doe defendants in their official capacities in the original complaint was a superfluous gesture vis-a-vis their municipal employer, the City of Kokomo. *Jungels v. Pierce,* 825 F.2d 1127, 1129 (7th Cir. 1987) (where plaintiff sued the city, "nothing was added by suing the mayor in his official capacity."); *Ledbetter v. Knox County, Tennessee,* 2006 WL 354200 (E.D.Tenn. February 15, 2006).

8. Apart from the statute of limitations question, the first question which should be considered is whether there was probable cause for Blackman's arrest. The evidentiary record shows the following:

  a. Prior to September 30, 2000, plaintiff Najee Sabree Blackman and his then girlfriend/fiancee Letia Poke drove to Kokomo, Indiana, in a U-Haul truck that Blackman had rented in Marietta, Georgia. The U-Haul truck had a trailer hitch on its rear and Blackman and Poke had used the hitch to tow Blackman's 1985 or 1986 Lincoln Continental from Georgia to Indiana. In Blackman's words given during his deposition testimony, the U-Haul was "fully loaded" with "stuff" and there "[was n]ot very much space in it. Upon their arrival, Blackman chose to rent a room at the Motel 6 in Kokomo. According to Blackman, Poke was his guest in the room that Blackman had rented.

  b. At some point prior to 3:00 a.m., Blackman and Ms. Poke went to a club known as "The Legion," which was located at 800 N. Purdum in Kokomo, in order to get something to eat. While they were at The Legion, Blackman and Ms. Poke became in an argument and Ms. Poke decided to leave the club to avoid the confrontation. Blackman followed Ms. Poke outside of The Legion and they became involved in an argument which evolved into a physical altercation. Blackman hit Ms. Poke on the right side of her face with his fist, and then grabbed Ms. Poke by the hair and pulled her down the street by her hair to their vehicle. Before they re-entered Blackman's car, Blackman "snatched" Poke's purse and threw the purse down the sewer located at the intersection of Monroe and Purdum. At that time, Blackman picked up Poke and threw her on the hood of his car, after which he placed Poke in the vehicle and drove to the Motel 6 where the two of them were staying.

  c. Upon their arrival at the Motel 6, Poke was crying hysterically and wanted to use the telephone located in their room in order to call for help. Blackman removed the telephone from the room so Ms. Poke could not contact anyone.

  d. At approximately 3:00 a.m., KPD Officer Lushin was dispatched to the Motel 6, which is located at 2808 South Reed in Kokomo, in regard to a domestic situation. When Officer Lushin arrived, he spoke with Ms. Poke, who was shaken up and crying. At that time, Poke explained to Officer Lushin what had occurred between her and Blackman, and Officer Lushin observed that Ms. Poke had a "knot" on her forehead and minor cuts to her lip.

  e. After she described what had occurred, Poke completed a Domestic Violence Affidavit which indicated that Blackman had "knowingly and intentionally touche[d]" Poke "in a rude, insolent or angry manner that caused bodily injury" on September 30, 2000. Poke wrote out the following description of the facts and circumstances in her Affidavit:

> I was at the [L]egion. [H]e got mad[,] dragged me on the ground[,] kicked me and hit and dropped purse with all personal belongings in it[.] My head hurts. I'm in pain.

While Officer Lushin was obtaining information about what had occurred, Motel 6 night clerk Lydia Morris advised Officer Lushin that Blackman had just walked around the building and was in the area.

7

  f. Officer Lushin went outside of the Motel 6 and eventually located Blackman in the back of a U-Haul truck after Lushin observed that the door to the truck was unsecured.

  g. Officer Lushin approached the U-Haul truck's rear door with caution as Ms. Poke had described being battered by Blackman and because Ms. Poke had advised him that Blackman had a weapon on or about his person. As Lushin approached the rear of the U-Haul truck, he drew his police department issued semi-automatic handgun, pointed it in Blackman's direction, and verbally instructed Blackman to exit from the truck. Blackman complied with these instructions.

 9. The elements of battery in Indiana are knowingly or intentionally touching another person in a rude, insolent, or angry manner resulting in serious bodily injury or by the use of a deadly weapon. IND. CODE § 35-42-2-1(3). *See Hoskins v. State*, 563 N.E.2d 571, 575 (Ind. 1990). There is no doubt whatever that the information provided to Officer Lushin by Ms. Poke regarding her mistreatment by Blackman during the early morning hours of September 30, 2000, combined with her demeanor and with the indications of injuries to her, supported the existence of probable cause for Officer Lushin to arrest Blackman for battery. As has already been noted, when probable cause has been gained from a reasonably credible victim or eyewitness, there is no constitutional duty to investigate further. Eyewitness accounts almost always provide probable cause to arrest unless evidence suggests that the information or its source is not credible. *Pasiewicz v. Lake County Forest Pres. Dist.,* 270 F.3d 520, 524 (7th Cir. 2001)(citing cases). Here there was no indication that the information from Ms. Poke should not be credited. "An essential predicate to any § 1983 claim for unlawful arrest is the absence of probable cause." *Kelley v. Myler*, 149 F.3d 641, 645 (7th Cir. 1998) (citing *Jones by Jones v. Webb,* 45 F.3d 178, 181 (7th Cir. 1995)). For the reasons explained, probable cause for Blackman's arrest did exist at the time he was apprehended by Officer Lushin. These circumstances negate an essential element of Blackman's claim of an unlawful warrantless arrest. *Richardson v. Bonds,* 860 F.2d 1427, 1432 n.4 (7th Cir. 1988) (federal law asks only whether the officers had probable cause to believe that the predicate offense, as the state has defined it, has been committed).

 10. The next question to be addressed is whether there was any violation of Blackman's Fourth Amendment rights in the course of his arrest, either with respect to the amount of force used or with respect to the fact that KPD, through the person of Officer Lushin, entered the U-Haul.

  a. Although Officer Lushin's right to arrest Blackman carried with it the right to use some degree of physical coercion or threat thereof to effect it, in fact no force was used in this case. Blackman was told to exit the truck and he did so. No force was directly or indirectly applied to Blackman. The fact that Officer Lushin momentarily pointed his service weapon at Blackman was fully justified by the circumstances.

  b. The U-Haul was not Blackman's dwelling, even in a transitory sense. Blackman had rented a room at the Motel 6. The U-Haul was parked near the motel room. Blackman retreated there after the altercation and episode with Ms. Poke.

Officer Lushin entered the U-Haul to locate Blackman, and of course succeeded in doing so. Although Blackman strains to re-label the U-Haul his dwelling, it was not, and whatever limited expectation of privacy he had in it, the rapidly developing circumstances under which Officer Lushin operated made the intrusion into the vehicle–and it was nothing more than that for Fourth Amendment purposes– reasonable. *United States v. Gori,* 230 F.3d 44, 54-55 (2nd Cir. 2000).

11. None of the defendant individuals were in a position to intervene in any portion of the interaction between Blackman and Officer Lushin. Apart from this lack of proximity and lack of opportunity, moreover, there was no infringement of Blackman's rights through an unlawful arrest, through the use of unreasonable force during his arrest, or otherwise.

12. Following Blackman's arrest, Ms. Poke informed Officer Lushin that Blackman had served time in prison and that Blackman had a firearm in the rear of his 1985 Lincoln Town Car. KPD officers were also informed that a telephone had been taken from the Motel 6 room rented by Blackman. Shotgun shell boxes and a telephone were observed from outside Blackman's automobile. This information was the basis for a search warrant application made during the early morning hours of September 30, 2000, after Blackman had been apprehended and arrested. At approximately 5:00 a.m., Howard Superior Court Judge Jessup issued a search warrant for Blackman's vehicle. Officer Lushin then executed the search warrant, and in doing so discovered a Mossburg 129 shotgun in the truck of Blackman's vehicle, two boxes of shotgun shells on its front passenger seat, and the Motel 6 telephone on the vehicle's rear floorboard.

13. Blackman was arrested for three (3) separate crimes, those being Class B felony serious violent felon in possession of a firearm, Class D felony theft, and Class A misdemeanor domestic violence battery. These charges were filed and docketed in No. 34C01-0010-CF-332. Later that same day, September 30, 2000, the Howard Circuit Court found probable cause for Blackman's arrest and set bond. On November 30, 2000, the State of Indiana moved to dismiss one of the three charges, and on February 16, 2001, the State moved to dismiss the remaining charges. Each of these motions was granted.

14. Although municipalities are considered "persons" for purposes of 42 U.S.C. § 1983, a local government such as the City of Kokomo may not be held liable under § 1983 unless the challenged action was performed pursuant to a municipal policy or custom. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694 (1978).

   a. "To establish that a municipality has violated an individual's civil rights under § 1983, the plaintiff must show one of the following: (i) that the city had an express policy that, when enforced, causes a constitutional deprivation; (ii) that the city had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage within the force of law; or (iii) that the plaintiff's constitutional injury was caused by a person with final policy-making authority." *Billings v. Madison Metro. Sch. Dist.,* 259 F.3d 807, 817 (7th Cir. 2001) (citing *McCormick v. City of Chicago,* 230 F.3d 319, 324 (7th Cir. 2000)).

9

    b.    The decision in *Dye v. Wargo,* 253 F.3d 296 (7th Cir. 2001), places a failure to train claim in its proper analytical perspective:

> the Constitution does not require municipalities to conduct training programs. Poor training is instead a means of showing intent for those constitutional torts where intent matters . . . . Proof of failure to train officers could be used to demonstrate that the municipality approves (hence has a policy of) improper conduct that training could extirpate. Such a claim in a case like this would depend on establishing that the City's policymakers knew that the police were using objectively unreasonable force in apprehending suspects, yet did nothing to solve the problem.

*Id.* at 299. Blackman's claim here, as was the plaintiff's claim in *Dye,* includes the claim that an arresting officer employed constitutionally excessive force. Yet also here, as in *Dye,* Blackman has not offered any evidence that use of excessive force is common in Kokomo, and "indeed has not produced evidence of even one prior incident." *Id.* (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 824 (1985)("considerably more proof than [a] single incident will be necessary . . . to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the unconstitutional deprivation"). Thus, Kokomo cannot be held liable on the theory that lack of more extensive training for its police officers "evinces a policy of using constitutionally improper force." *Id.* In fact, for liability to attach based Kokomo's alleged failure to train Officer Lushin or other officers in responding to complaints of domestic battery or in seeking and apprehending suspects, Blackman must show a close connection between that asserted policy and his injury. *City of Canton,* 489 U.S. at 388-89. In other words, a plaintiff must show that his or her constitutional "injury would have been avoided" had the governmental entity properly trained its employees. *Oviatt ex rel. Waugh v. Pearce,* 954 F.2d 1470, 1474 (9th Cir. 1992)(citing *City of Canton,* 489 U.S. at 389-91). No showing of that nature has been offered here.

    15.    Because no KPD officer violated Blackman's constitutional rights in relation to the events described in the amended complaint, the City of Kokomo cannot be held liable under Blackman's theory of negligent training or supervision. *Proffitt v. Ridgway*, 279 F.3d 503, 507 (7th Cir. 2002) (citing *City of Los Angeles v. Heller*, 475 U.S. at 799); *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir.) ("it is well established in this Circuit that a municipality's liability for a constitutional injury requires a finding that the individual officer[ ] [is] liable on the underlying substantive claim"), *cert. denied*, 531 U.S. 957 (2000)).

    16.    The defendants have discussed the viability of any possible claim against them under Indiana state law.

    a.    The City of Kokomo is a political subdivision within the meaning of the Indiana Tort Claims Act, IND. CODE § 34-4-16.5-1 et seq. (hereafter the "ITCA"). The ITCA provides, among other things, that a claim against a political subdivision is barred unless the prescribed notice is filed within 180 days after the loss occurs. IND. CODE § 34-4-16.5-7; *Bradley v. Eagle-Union Community Sch. Corp. Bd. of Sch. Trustees*,

647 N.E.2d 672, 676 (Ind.Ct.App. 1995). This notice must provide certain facts and be served upon the governing body of the governmental entity in a prescribed form. IND. CODE §§ 34-13-3-10, 34-13-3-12. The notice requirements of the ITCA apply not only to suits against political subdivisions but also to suits against employees of political subdivisions. *VanValkenburg v. Warner*, 602 N.E.2d 1046, 1048 (Ind.Ct.App. 1992). Notwithstanding the premise of Blackman's claim that he was mistreated, the notice provision of the ITCA applied to the misconduct Blackman has alleged in this case if claims under state law were asserted. *City of Anderson v. Davis,* 743 N.E.2d 359, 366 n.4 (Ind.Ct.App. 2001).

  b. Blackman did not file a notice of tort claim or otherwise comply with the notice provision of the ITCA with respect to the events forming the basis of his claims in this case. There is also no contention that Blackman was exempt from filing such a notice.[1] The failure to file a timely notice satisfying the requirements of the Indiana Tort Claims Act constitutes a jurisdictional bar to any tort action against a political subdivision or its employees. *Warfield v. Adams,* 582 F. Supp. 111, 120 (S.D.Ind. 1984).

  c. Therefore, if any claim under state law was intended or could be found in the amended complaint, the defendants are entitled to summary judgment as to it.

  17. Judgment as a matter of law is appropriate when a party "fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322. That is the case here. Accordingly, the defendants' motion for summary judgment must be **granted,** while that of Blackman must be **denied.**

Judgment consistent with this Entry shall now issue.

  **IT IS SO ORDERED.**

Date:  03/16/2006

                 John Daniel Tinder, Judge
                 United States District Court

---

[1] The 180-day notice requirement is subject to the following statutory exception: "If a person is incapacitated and cannot give notice as required . . . the person's claim is barred unless notice is filed within one hundred eighty (180) days after the incapacity is removed." IND. CODE § 34-4-16.5-8. Blackman does not contend that he falls within this exception to the notice requirement.